MaddeN, Judge,
delivered the opinion of the court:
The plaintiff sues for an increase in his retired pay, to which increase he claims to be entitled under the provisions of the Career Compensation Act of 1949 (63 Stat. 802).
*678 The plaintiff became an officer in the United States Marine Corps Beserve in 1926. Between that time and November 1, 1940, he had some 12 years of inactive status and some 3 years of active service with the Civilian Conservation Corps. On November 1, 1940, he again entered on active duty, with the rank of major. However, on August 1, 1941, he was found, on a physical examination, not fit for duty and was placed on the inactive list. In February 1942, he appeared before a Naval Betiring Board which found that his incapacity was a result of coronary heart disease, with secondary asthma; that it was incurred in line of duty and was permanent.
The findings of the Naval Betiring Board were approved by the Secretary of the Navy who transmitted them to the President with the recommendation that the President approve the findings and place the plaintiff on the retired list. The President did so, and, as of April 1, 1942, the plaintiff was placed on the retired list with pay in conformity with the provisions of 34 U. S. C. 417, as extended by section 4 of the Act of August 27, 1940, 54 Stat. 864. Since that time, the plaintiff has been receiving retired pay in the amount of $257.82 per month, which is 75% of the basic pay of a major as of the time of the plaintiff’s retirement.
The Career Compensation Act of 1949, section 411 (63 Stat. 823), and the regulations promulgated by the President pursuant thereto, Executive Order 10124, 15 F. R. 2375, 37 U. S. C. 281, authorized the review, within 5 years from the date of the statute, of the cases of persons such as the plaintiff, who were already receiving disability retired pay. In this review, to be made by a Physical Beview Council, a certain percentage of disability was to be determined for the officer and, using that percentage as one factor, a computation was to be made of the amount of retired pay which he should receive. The statute placed an upper limit of 75% of active duty pay, but the active duty pay on which it was to be computed was the higher active duty pay of 1949 instead of the active duty pay of the officer at the time of his retirement, which, in the case of the plaintiff, was 1942.
If the review pursuant to the Career Compensation Act had resulted in the determination of a high percentage of *679 disability to the plaintiff, he would have become entitled, under the Act, to $84.18 more retired pay per month. The Physical Eeview Council, in 1950, reviewed the plaintiff’s medical records and, basing its ratings on the Schedule for Eating Disabilities in current use by the Veterans’ Administration, arrived at a 40 percent disability for the plaintiff, 30 percent for coronary heart disease and 10 percent for asthma. The 40 percent disability rating did not entitle the plaintiff to any higher retired pay than he was then receiving.
The plaintiff appealed the determination of the Physical Eeview Council to the Physical Disability Appeal Board, Navy Department. The plaintiff claimed before thatBoard that he was entitled to a disability rating of 100%. But the Appeal Board affirmed the 40% rating of the Eeview Council, and its decision was approved by the Secretary of the Navy on May 1,1951.
In this suit the plaintiff asserts that the administrative determination was contrary to the statutes and was capricious and arbitrary. He relies heavily upon the fact that the Veterans’ Administration on August 11, 1949, determined that from the time of the termination of the plaintiff’s active service in 1941, he had been totally disabled and entitled to a waiver of the premium on his National Service Life Insurance. The Government’s response is that the Veterans’ Administration never examined the plaintiff for pension purposes, and therefore never made a determination of percentage of disability; that its decision to waive premiums on a life insurance policy did not, in fact, involve the application of the same standards as those used for determining the right to a pension. We have no doubt that the Veterans’ Administration itself would not make the same kind of thorough study of a case when all that was at stake was the waiver of life insurance premiums as it would make if the determination involved the right to a pension.
Section 402 (a) (3) of the Career Compensation Act provides that the percentage of disability shall be determined in accordance with the standard schedule of rating disabilities in current use by the Veterans’ Administration. But the determination is to be made by the Secretary, or by *680 those to whom be delegates the task, and not by the Veterans’ Administration. If the Veterans’ Administration schedule provided for a certain percentage of disability for the loss of an arm or a leg, there would, of course, be no room for a departure by the Secretary from that percentage. But where, as in the plaintiff’s case, heart disease and asthma are involved, the percentage is a matter of degree. The Veterans’ Administration schedule, given in our finding 14, shows four different percentages of disability for each of these diseases. For the purposes of the Career Compensation Act, it was for the Secretary and his doctors, and not for the Veterans’ Administration and its doctors, to decide the degree of the plaintiff’s afflictions. There is no evidence that the decision was not conscientiously made by those to whom Congress entrusted its making.
The plaintiff’s petition will be dismissed.
It is so ordered.
Laramore, Judge; Whitaker, Judge; LittletoN, Judge/ and Jones, Chief Judge, concur.
FINDINGS OF FACT
The court, having considered the evidence, the report of Commissioner Roald A. Hogenson, and the briefs and argument of counsel, makes findings of fact as follows:
1. The plaintiff is a citizen of the United States and a resident of the State of North Carolina.
2. Commencing in 1926, the plaintiff served 16 years as an officer in the United States Marine Corps Reserve, of which 12 years was in an inactive status, about 3 years was in active service with the Civilian Conservation Corps, and about one year was in active service with the United States Marine Corps.
3. On November 1, 1940, the plaintiff entered on active duty with the rank of major, and on August 1, 1941, submitted to a physical examination for release from active duty. He was found “not fit to perform active duty at sea or on foreign service” and “not physically qualified to perform all the duties at sea and in the field.” The plaintiff was then placed on the inactive list.
*681 4. On February 16, 1942, the plaintiff appeared before a Naval Retiring Board, convened at Marine Barracks, Parris Island, South Carolina. The Board found as follows:
* * * that Major George E. Golding, U. S. Marine Corps Reserve, is incapacitated for active service by reason of coronary heart disease, arteriosclerotic (a hardening of the nutrient arteries of the heart) with secondary asthma (coughing spells due to circulatory deficiency on exertion) , that his incapacity is permanent and was incurred in line of duty and that his disability did not exist prior to November 1, 1940, the date on which he was assigned to active duty.
5. The findings of the Naval Retiring Board were thereupon transmitted to the Secretary of the Navy, and by him laid before the President with the recommendation that the findings of the Board be approved and that plaintiff be retired from active service and placed on the retired list.
6. On March 28,1942, the President approved the proceedings and findings of the Naval Retiring Board and the recommendation of the Secretary of the Navy, and as of April 1, 1942, plaintiff was placed on the retired list with pay in conformity with the provisions of 84 U. S. C. 417, as extended by sec. 4 of the Act approved August 27, 1940, 54 Stat. 864.
The plaintiff has been receiving as disability retirement pay the sum of $257.82 per month, representing 75% of the sum of $343.75, the basic pay of a major as of the date of plaintiff’s retirement. The plaintiff claims to be entitled to the additional sum of $84.18 per month since October 1,1949, pursuant to the terms of the Career Compensation Act of 1949.
7. Following the enactment of the Career Compensation Act of 1949,63 Stat. 802, and the promulgation by the President of regulations pursuant to section 411 thereof, Executive Order 10124, 15 F. R. 2375, 37 U. S. C. A. 281, the Secretary of the Navy, as authorized by the Executive Order, issued instructions under date of May 8,1950, to the departmental Physical Review Council, concerning the processing of the records of all persons encompassed within the provisions of the Act, as follows:
(a) The Physical Review Council shall review the records of all persons above described and recom *682 mend to the Secretary of the Navy the percentage of disability to be assigned to each individual, such percentage of disability to be based upon and determined as provided in Section 411 of the Career Compensation Act of 1949.
(b) Upon notification that the Secretary of the Navy has determined the percentage of disability to be assigned to a member or former member, the Chief of Naval Personnel or Commandant of the Marine Corps, as appropriate, shall inform such member or former member of (a) the percentage of disability as determined by the Secretary of the Navy, (b) the status and benefits to which such member or former member is or may be entitled under the alternative clauses (A) and (B) of Section 411 of the Career Compensation Act of 1949, (o) the right of such member or former member to make an election of benefit thereunder within the five-year period beginning 1 October 1949, (d) the effect of Section 402 (h) of the said Act with respect to the disability retirement pay to which such member or former member is or may be entitled, and (<?) process to conclusion any election by such member or former member made in conformity with the provisions of Section 411 of said Act.
8. To implement the directive of the Secretary of the Navy, the members of the Physical Review Council issued “Instructions Governing the Preliminary Determination of the Percentage of Disability of Members or Former Members Heretofore Retired by Reason of Physical Disability”, as follows:
1. In determining the percentage of disability of members or former members to whom these instructions apply, records will be considered or will not be considered as set forth below:
(a) Consideration will be given to all available records compiled prior to the effective date of retirement.
(b) Consideration will be given to available records which have a direct bearing upon the physical condition of the member or former member as it existed at the time of retirement although compiled subsequent thereto.
(o) Consideration will not be given to records compiled subsequent to retirement which have no direct relation to the physical condition of the member or former member as it existed at the time of retirement, except those which point to an erroneous diagnosis as the basis of retirement.
*683 2. The percentage of disability will be determined in accordance with the standard schedule of rating disabilities in current use by the Veterans’ Administration.
3. Assignment of the preliminary determination of the percentage of disability will be reported on forms provided for that purpose, and upon which will be recorded each condition which caused disability and the percentage assigned thereto and in appropriate cases the combined disability resulting from two or more disabling conditions; provided if any single disability or group of disabilities are found to rate a combined rating of 80 per centum or more, the listing of additional disabilities is not required.
9. Under date of August 12, 1949, the Chief of the Disability Insurance Claims Division of Veterans’ Administration advised plaintiff in part as follows:
As a result of a recent review of your case the Disability Insurance Claims Division rendered a decision on August 11,1949, determining that you were totally disabled and entitled to waiver of payment of premiums on your National Service Life Insurance contract N 3 26 86 from August 1, 1941, to January 31, 1949, and on your National Service Life Insurance contract V 405 92 61 from February 1, 1949. This decision was based on additional evidence which is now of record in your disability insurance file. It will not be necessary to make further payment of premiums on this insurance as long as you continue to be totally disabled. All unearned premiums will be refunded to you.
10. The plaintiff was never examined by the Veterans’ Administration for pension purposes.
11. During 1950, the Physical Review Council reviewed plaintiff’s medical records in the Navy files and recommended to the Secretary of the Navy that a 40% disability rating be assigned to the plaintiff, and the plaintiff was subsequently informed of the 40% disability rating as approved by the Secretary of the Navy.
12. The Physical Review Council based its rating of plaintiff’s disability on the standard Schedule for Eating Disabilities in current use by the Veterans’ Administration, a copy of which is in evidence as plaintiff’s exhibit No. 1. Pursuant to Code No. 1005 thereof, the Council rated plain *684 tiff’s coronary heart disease (arteriosclerotic) at 30%, and pursuant to Code No. 6602, plaintiff’s asthma (cardiac) (due to circulatory deficiency in the lungs) at 10%, which resulted in a combined rating of 40% disability.
13. Under the heading of General Policy in Rating Disability, the Schedule for Rating Disabilities sets forth among others the following provisions:
1. Essentials of Evaluative Bating. — This rating schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. The percentage ratings represent as far as can practicably be determined the average impairment in earning capacity resulting from such diseases and injuries and their residual conditions in civil occupations, of the various grades of severity as set forth with due regard to previous determinations for compensation or pension purposes. * * *
* * * * *
3. Resolution of Reasonable Doubt. — It is the defined and consistently applied policy of the Veterans’ Administration to administer the law under a broad interpretation, consistent, however, with the facts shown in every case. When after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding service origin, the degree of disability, or any other point, such doubt will be resolved in favor of the claimant. * * *
*****
7. Higher of Two Ratings. — If there is a reasonable doubt, as above defined, as to which of two ratings shall be applied in any given case, the claimant is entitled to the higher.
# * * * *
16. Total Disability Ratings. — The ability to overcome the handicap of disability varies widely among individuals. The rating, however, is based primarily upon the average impairment in earning capacity, that is, upon the economic or industrial handicap which must be overcome and not from individual success in overcoming it. * * *
*****
18. Unemployability. — The unemployability of the individual for the purpose of a total disability rating may be established with age, constitutional defects, *685 limitation of occupational experience and ability, particularly limitation to manual labor, as important contributing factors. * * *
14. The disability ratings under Code Nos. 7005 and 6602 in the Schedule for Eating Disabilities are as follows:

’Percentage Code No. Rating

7005 Arteriosclerotic heart disease:
During, and for 6 months following acute illness from coronary occlusion or thrombosis, with circulatory shock, etc- 100
Following typical history of acute occlusion or thrombosis, more than strictly sedentary employment pre-cluded_ 80
Following typical history of acute coronary occlusion or thrombosis as above, or with history of substantiated repeated anginal attacks, more than light manual labor not feasible_ 60
Following typical coronary occlusion or thrombosis, or with history of substantiated anginal attack, ordinary manual labor feasible_ 30
Note. — Authentic myocardial insufficiency with arteriosclerosis may he substituted for occlusion.
6602 Asthma, bronchial:
Pronounced; marked emphysema, attacks very frequent, dyspnea on slight exertion, between attacks, marked loss of weight or other evidence of severe impairment of general health_ 100
Severe; moderate emphysema, frequent attacks (one or more weekly), marked dyspnea on exertion between attacks, impairment in general health manifested by malnutrition, etc- 60
Moderate; slight to moderate emphysema, attacks rather frequent (10-14 day intervals), moderate dyspnea on exertion between attacks- 30
Mild; without emphysema, and occurring at widely separate intervals_ 10
Emphysema:
No separate rating; covered by basic condition.
15. The plaintiff’s Navy Department medical record, which was considered by the Physical Review Council, a copy of which is in evidence as a part of plaintiff’s exhibit No. 2, discloses that on several occasions from 1926 through 1940, the plaintiff submitted to Navy examinations and was found to have no physical defects except for defective vision cor *686 rected by glasses. Each time he was found physically qualified to perform active duty at sea or on foreign service, except that in June 1934, he was recorded as somewhat overweight and temporarily was found physically qualified for shore duty only.
In the examination on August 1, 1941, for release from active duty, the observation was recorded that the plaintiff had a history of asthma. Thereafter, the pertinent parts of the plaintiff’s medical record are as follows:
U. S. NAVAL HOSPITAL, CHARLESTON, S. C. 11-14-41. Admitted with asthma, No. 801. Not misconduct. P. I.: Patient is admitted to this hospital with orders to appear before a Board of Medical Survey to determine the origin and extent of the disability for which he was found not physically qualified on August 1, 1941, for release from active duty. Form “Y” dated August 1, 1941, at Norfolk, Va., showed defects to be: 1. Hyperopia 3/20 bilateral corrected to 20/20, 2. History of Asthma. Patient has been wearing glasses for the past ten years, but only in the past six years has it been necessary to wear glasses constantly. As far as the Asthma is concerned patient was perfectly well until February 11, 1941, at which time after a lake of six miles and climbing one flight of stairs he suddenly noticed marked difficulty in breathing. He describes a typical Asthmatic attack at this time with inability to inspire or expire and his chest was full of wheezing sounds. At this time he was given Ephedrine with relief. From this time until middle of April the wheeze was present almost constantly. Since then his status has been that of having actué [sic] attacks following slight exertion and also in damp foggy weather regardless of exertion. Patient claims to have had Influenza but carried on his duties without turning in to a hospital, although he was treated daily in the sick bay. * * * No history of allergy. G. B,: No chest pain. Coughing only during asthmatic attacks. No hemoptysis. See P. I. No ankle edema. Sleeps on one pillow. G. I. Appetite good. No nausea or vomiting. No heartburns or belching. * * * P. E. Patient is a well developed slightly obese white male in no acute distress. * * * Chest: Lungs expand equally. Fremitus present and equal. Besonant throughout. Vesicular breathing. No rales heard. Heart: Not enlarged to percussion. Sounds slightly distant but of good quality. Ehythm *687 regular. A2 greater than P2. No murmurs. Pulse: Rest 96, After exercise 112, 3 minutes after exercise 100. Blood pressure: Best — 142/94. 3 Minutes after exercise 142/90. Abdomen: Liver descends two fingers below costal margin on deep inspiration. * * * 11-17-41. Patient feels quite well but does admit having slight wheezing occasionally at night. Blood count normal. 11-20-41. Having complete workup from cardiorenal aspect. Mosenthal test shows renal insufficiency with a fixed specific gravity. 6 foot heart plate shows measurements to be within normal limits. Chest X-ray reveals no pathology. * * * E. C. G. shows sinus tachycardia and left axis deviation 50 degrees marked. The tracing is compatible with Ar-teriosclerotic Heart Disease. 11-22-41. Diagnosis changed to corostaey heaet disease, arteriosclerotic, No. 237. Beason: Established. Not the result of his own misconduct. 11-24-41. This initial asthmatic attack occurred on February 11, 1941, and there have been recurrence mild in nature. There have been no attacks during period of hospitalization. On admission it was noted patient’s nail beds showed slight cyanosis. The highest blood pressure reading was 154/90, on one occasion only. The positive findings have been as follows: Slight cyanosis of nail beds, elevation of diastolic pressure with occasional systolic elevation, affixed urinary specific gravity with diminished urinary output and a slight trace of albumin (From Mosenthal Test). Marked left axis deviation. It is felt the patient presents a cardiorenal type of asthmatic attack.
11-25-41. eepoet oe medical survey. Admitted from: Yard Dispensary, Navy Yard, Charleston, S. C. Date: 11-13-41. Diagnosis: coroNAry heaet disease, ARTERIOSCLEROTIC, No. 237. Disability is not the result of his own misconduct and was incurred in line of duty. Did not exist prior to enlistment. Facts are as follows: Attention is invited to the orders of the Major General Commandant, dated 11-4-41 to appear before a Board of Medical Survey to determine origin and extent of the disability for which he was found not physically qualified for release from active duty on 8-1-41. Patient was admitted to this hospital 11-14-41 with diagnosis of Asthma, No. 1801, complaining of shortness of breath and “wheezing” on exertion. According to the patient’s accepted history and other evidence he had Influenza in January 1941 (while on active duty) and on February 11, 1941, had his first *688 “Asthmatic” attack. These have recurred intermittently since then and are characterized by shortness of breath and “wheezing sensation” in chest on exertion. According to the health record he was admitted to Norfolk Naval Hospital 7-23-41 in accordance with orders of the Major General Commandant, for examination prior to release from active service. He was admitted with Diagnosis Undetermined (Asthma) and discharged with No Disease (Observation, Asthma) . On 8-1-41 his unaided vision was 3/20 in each eye and he was “not found physically qualified for duty.” General physical, routine laboratory, and special examinations were essentially negative, except for: 1. Marked left deviation of the electrical axis of the electrocardiogram; 2. Elevated diastolic pressure with occasional systolic elevation (154/90); 3. Urinary specific gravity fixed at 1.010; 4. Vision of 3/20 in each eye correctible to 20/20. Diagnosis was changed to Coronary Heart Disease, Arteriosclerotic on 11-22-41; reason, error. At present, he has attacks of dyspnoea on slight exertion. It is the opinion of the Board that this patient is unfit for service and that hospitalization is no longer required. Present condition: Unfit for Service. Probable future duration: Permanent. Becommendation: That he appear before a Ketiring Board.
At the time of his retirement on April 1,1942, the plaintiff was 52 years of age.
16. On or about January 1,1951, the plaintiff submitted an appeal to the Physical Disability Appeal Board, Navy Department, from the disability rating assigned by the Physical Review Council.
17. Under date of July 11,1950, the Veterans Administration advised the Navy Physical Disability Appeal Board in part as follows:
It is understood that the law you are administering requires that disability ratings conform to the schedule of disability ratings of the Veterans Administration. However, that schedule of ratings has been established by this agency for compensation or pension purposes rather than for insurance purposes.
Different standards are used by this agency in making determinations of the degree of disability for compensation or pension purposes and those for insurance purposes. The degree of disability for compensation or pension is established by the application of the *689 schedule authorized and promulgated pursuant to law which reflects the effect that a particular disease or injury would have on the average man. For insurance purposes, on the other hand, the extent of disability is measured solely on the basis of its effect on the insured in the individual case.
Consequently, a finding of total or total permanent disability for compensation or pension would not, of itself, justify a similar finding for insurance purposes, nor would the assessment of a lesser degree of disability for compensation or pension preclude a decision that total or total permanent disability exists for insurance purposes.
18. The Physical Disability Appeal Board advised the plaintiff as follows:
Particular attention is invited to the provision of the law which requires that the percentage of disability assigned a member shall be based upon the disability as of the time he was last retired and will be determined in accordance with the standard Schedule for Bating Disabilities in current use by the Veterans’ Administration. Therefore, although both the Marine Corps and the Veterans’ Administration use the same Schedule for Rating Disabilities, the determination of your percentage of disability for Marine Corps retirement purposes may differ from that of the Veterans’ Administration, as the Marine Corps valuation is based solely upon your condition when retired, and is not subject to periodic re-determination to reflect your current condition. The only evidence desired by the Board is that which will assist it in determining the extent of your disability when last retired.
19. The plaintiff submitted to the Physical Disability Review Board that as of the time of his retirement he was entitled to a disability rating of 100%.
20. Under date of April 12, 1951, the Physical Disability Appeal Board concurred in the percentage of disability (40%) initially approved by the Secretary of the Navy, pursuant to the assignment made by the Physical Review Council, and recommended that the assignment be affirmed.
21. The proceedings and recommendation of the Physical Disability Appeal Board were approved by the Secretary of the Navy on May 1,1951, and plaintiff was so notified under date of May 4, 1951.
*690 22. The plaintiff’s medical records, as of the time of his retirement with pay, do not disclose the following elements for disability ratings in excess of 30% under the above-quoted Code No. 7005 of the Schedule for Eating Disabilities: (a) Circulatory shock, (5) history of acute occlusion or thrombosis, or (<?) substantiated repeated anginal attacks.
After assigning a 30% disability rating for the plaintiff’s arteriosclerotic heart disease, the Physical Keview Council concluded that such rating did not completely represent the impairment which the plaintiff had as of the date of his retirement. They concluded that while the asthma was diagnosed as secondary to the circulatory ailment, the medical record indicated that it was probably not due entirely to that condition. The Council decided to rate the additional disability by analogy to and assigned 10% disability under Code No. 6602 covering the disease of bronchial asthma.
23. Total disability for the purpose of waiver of insurance premiums is not determined by the Veterans Administration by application of the Schedule for Eating Disabilities.
24. The administrative determination by the Navy Department of a 40% disability was neither arbitrary, unreasonable, nor capricious.
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes that as a matter of law the plaintiff is not entitled to recover, and his petition is therefore dismissed.