Jones, Chief Judge,
delivered the opinion of the court:
This is a suit by an Air Force Reserve officer who alleges a service-connected disability of more than 30 percent at the time of his release from active service.
Plaintiff seeks disability retired pay of a lieutenant colonel with over 12 years’ service to which he claims to be entitled pursuant to section 402(a) of the Career Compensation Act of 1949, 63 Stat. 802, 816, as amended 37 U.S.C. 272 (1952 ed.).[1]
The primary question involved is whether the Air Force Disability Appeal Board was arbitrary and capricious or unsupported by substantial evidence in reducing the rating of plaintiff’s percentage of disability, as found by two previous boards, under the provisions of the Career Compensation Act of 1949, supra, and the Veterans Administration Schedule for Rating Disabilities, 1945 edition, and Extension 7 of that schedule.[2]
The facts in this case are as follows: On May 11, 1944, plaintiff, while serving on active duty was admitted to First General Hospital, APO 517. The diagnosis was “arthral-gia, acute, angles, bilateral, knee left, and hip, left, mild cause undetermined.” He was discharged to duty on May 13, 1944. On August 7, 1944, plaintiff went to the office of a private physician who administered osteopathic manipulative treatment on that date and intermittently thereafter through January 1950. On March 12, 1951, plaintiff was examined at Wright-Patterson Air Force Base, Dayton, Ohio, and found qualified for extended active duty, general service. However, a radiographic report, dated May 7,1954, from the United States Air Force Hospital at that installation reads in pertinent part as follows:
Examination of the cervical spine shows hypertrophic arthritic changes involving the lower cervical spine with encroachment upon the foramina between the third, fourth, fifth, and sixth cervical vertebrae on the left side and also on the right side at the same levels.
*129 Further radiographic reports on June 17,1954, and June 21, 1954, followed. The latter report summarizes the defects and diagnosis as “Degenerative joint disease, multiple osteoarthritis.” A report, dated June 22, 1954, of a medical board convened at the same hospital, diagnosed plaintiff’s condition as “7230—Degenerative joint disease, multiple, due to unknown cause (osteoarthritis). LOD: Yes.” That board recommended a finding that plaintiff was unfit for military duty and that plaintiff meet a physical evaluation board.
Accordingly, on June 24, 1954, an Air Force Physical Evaluation Board conducted a modified hearing and diagnosed plaintiff’s condition as “Arthritis, hypertrophic (osteo-arthritis) involving: cervical spine, lumbar spine, shoulders bi-lateral.” This modified board found plaintiff unfit for military duty, 40 percent disabled, and that plaintiff’s disability “may be permanent.” The board recommended that plaintiff be temporarily retired. However, the Air Force Physical Keview Council found, on July 2, 1954, that the findings of the Physical Evaluation Board which met in the modified hearing should be revised to reflect not more than a 20 percent disability and that plaintiff should be returned to duty.[3] It further found plaintiff’s disability was permanent and of a degenerative type not inconsistent with plaintiff’s age. Plaintiff did not agree with the revised findings.
Thus, on July 13,1954, another Air Force Physical Evaluation Board met in a formal hearing. Plaintiff appeared and testified.[4] Also testifying at that hearing was the Chief of the Medical Service of the United States Air Force Hospital, Wright-Patterson Air Force Base.[5] The latter witness concurred with the medical board’s diagnosis made on June 22, 1954, and the clinical summary attached to that board’s report. The formal Physical Evaluation Board then found plaintiff unfit for military duty, 40 percent disabled and his disability permanent. The diagnosis was “arthritis, hypertrophic (osteo-arthritis), involving: cervical spine, *130 lumbar spine and shoulders, bi-lateral, requiring constant use of neck and body braces.”
Subsequently, pursuant to letter orders, the Air Force Physical Disability Appeal Board was convened at Washington, D.C., on August 19, 1954. Plaintiff was neither present nor represented by counsel. However, a brief by his counsel, submitted in the reconvened July 13,1954, Physical Evaluation Board, was considered by the Disability Appeal Board and the latter board’s decision rested on its interpretation of the “Note” to paragraph 3 of Extension 7 of the Veterans Administration Schedule for Bating Disabilities.[6] The Disability Appeal Board recommended discharge with severance pay based upon its finding that plaintiff was only 20 percent disabled. The Secretary of the Air Force, on August 30, 1954, approved the Disability Appeal Board findings and plaintiff was thus discharged September 10,1954, with severance pay, pursuant to sections 402(a) and 403 of the Career Compensation Act of 1949, supra. After discharge, the plaintiff received treatments from the Veterans Administration.[7] It found plaintiff at least 60 percent disabled.[8] Plaintiff’s subsequent applications to the Air Force Board for the Correction of Military Becords, in which plaintiff requested that the record be corrected to show that he “was retired for physical disability incident to service with a rating of 60%”, were denied.
The record is clear that the findings of the Air Force Physical Beview Council and Disability Appeal Board were based upon their interpretation of the “Note” to paragraph 3 of Extension 7 to Diagnostic Code 5003. Defendant contends (1) that the “Note” does not apply to arthritis itself, (2) that the rating of arthritis on the 10 percent to 100 percent scale was discontinued by the same Extension 7, and (3) that the 20 percent disability rating assigned plaintiff was correct. We do not agree.
The substitute paragraph for the deleted portion of Extension 7 applies to degenerative arthritis. (Finding 41.)
The first sentence of the “Note” in question states that the 10 and 20 percent figures set out in the substituted para *131 graph will not be utilized in rating by analogy other diseases of bones, joints, and muscle. The second sentence provides that other ratings than the 10 and 20 percent minimum will be authorized in the range of 10 to 100 percent based on the extent of involvement. Since the “Note” modifies and is essentially a part of the substituted paragraph respecting degenerative arthritis, it is necessarily applicable to the form of arthritis with which the paragraph deals, which is degenerative arthritis.
When both the substituted paragraph and the “Note” are construed together, the higher ratings, as well as the 10 and 20 percent ratings, for degenerative arthritis are provided, depending on the severity and degree of disability.
If defendant’s construction of the “Note” were adopted we would have to reach the absurd conclusion that all degrees and types of arthritis, without regard to the severity, could never be rated at more than 20 percent. Further, while the Physical Review Council and the Disability Appeal Board did not have the benefit of subsequent Air Force publications in making their determinations those publications are enlightening and support the construction of the Diagnostic Code which we have adopted.[9]
It is also clear that the Air Force Physical Evaluation Board of July 13, 1954, correctly applied the ratings.[10] It is also relevant that the Veterans Administration correctly applied its own rating schedule under Extension I.[11] No ailments analagous to arthritis were considered by the Veterans Administration. In arriving at ratings of 60 percent and above it obviously applied a 10 percent to 20 percent *132 disability rating for each major or minor joint group involved. While the Veterans Administration’s determinations of the degree of disability are not conclusive upon this court, such determinations made in the application of the schedule which it formulated and under which it operates may well be persuasive of its proper construction in the event it is at all ambiguous. It also is significant that most of the medical doctors who actually examined plaintiff found him more than 30 percent disabled.[12]
In Hordechuck v. United States, 144 Ct. Cl. 492, the Army Board for the Correction of Military Records concluded that the plaintiff, who had a prolapsed rectum, had been correctly rated as 10 percent disabled, by analogy, under Diagnostic Code 7332. However, Diagnostic Code 7334 specifically provided a minimum disability rating of 30 percent for one suffering from that plaintiff’s disability. We held there that application of an analagous rating for a listed condition was unauthorized. Since the action of the Army Disability Appeal Board, as approved by the Secretary, was contrary to the provisions of the Career Compensation Act of 1949, we thus held plaintiff Hordechuck was entitled to recover. A similar situation exists here. Defendant attempts to distinguish Hordechuck on the ground that plaintiff here has always been rated under the correct Diagnostic Code as distinguished from Hordechuck who was incorrectly rated under the wrong code. Such distinction is untenable. The essential point is that the Air Force Physical Review Council *133 and Disability Appeal Board misinterpreted the Diagnostic Code. It makes little difference which section or sections are misconstrued. Hordechuck v. United States, supra; cf. Frith v. United States, 156 Ct. Cl. 188 (1962). Nothing herein said negates our prior declaration that “for the purposes of the Career Compensation Act, it was for the Secretary and his doctors, and not for the Veterans Administration and its doctors, to decide the degree of plaintiff’s affliction.”[13] The instant case is one wherein the Secretary and his delegates themselves misinterpreted and acted contrary to the governing Diagnostic Code.
The Air Force Disability Appeal Board which convened on August 19, 1954, consisted of five officers, including two medical officers and three line officers, only one of whom was a Reserve officer. Plaintiff alleged that approximately 80 percent of the officers in the Air Force, at that time, were Reserve officers. Plaintiff contends that this board was not properly constituted because it did not conform to the requirements of section 254(a) Armed Forces Reserve Act of 1952, 66 Stat. 481, 496, 50 U.S.C. 1005 (1952 ed.), now 10 U.S.C. 266,[14] and that denial of his October 23,1956, application to the Air Force Board for the Correction of Military Records to reconsider its prior denial of a hearing to plaintiff on that ground coupled with such prior denial and the Secretary’s approval of that action was arbitrary and capricious. In view of our decision as to the proper interpretation of the Diagnostic Code it is unnecessary to reach this question.
Plaintiff is entitled to recover retirement pay as authorized under the Career Compensation Act, supra, from the date of his release from active duty to date of death, less severance pay and Veterans Administration compensation received by him. The amount of recovery will be determined pursuant to Rule 38(c) of the rules of this court.
*134 FINDINGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner Richard Arens, and the briefs and argument of counsel, makes findings of fact as follows:
1. (a) Plaintiff, who was bom in Pittsburgh, Pennsylvania, on September 30, 1896, is a resident of Ohio.
(b) On August 15,1918, he entered upon active duty as an enlisted man in the United States Army.
(c) On January 24, 1919, he was honorably discharged by reason of demobilization.
(d) On March 17, 1942, he was appointed Captain, Army of the United States.
(e) On December 7,1942, he was promoted to Major, Army of the United States, Air Corps.
(f) On March 1,1944, he was promoted to Major, Army of the United States.
(g) On March 27, 1947, he was appointed Lieutenant Colonel, Air Corps Reserve.
(h) On March 28, 1947, he was promoted to Lieutenant Colonel, Army of the United States.
(i) On April 16, 1951, he was appointed Lieutenant Colonel, Air Force of the United States.
(j) On November 24, 1952, he accepted an indefinite term appointment as Lieutenant Colonel, Air Force Reserve.
2. Plaintiff had the following periods of active duty as a commissioned officer:
(a) from April 2,1942, to September 4,1944, when he was relieved by reason of no suitable assignment;
(b) from June 22, 1946, to April 15, 1947, when he was relieved by reason of demobilization;
(c) from September 6, 1947, intermittently to September 10,1954, when he was honorably discharged by reason of physical disability under the provisions of Section 402 of the Career Compensation Act of 1949,[15] with entitlement to disability severance pay as provided in Section 403 of the aforesaid Act. Within this period plaintiff entered on extended active duty for the Korean war on April 15,1951, remaining *135 on such extended active duty until relieved by reason of his physical disability.
3. In this suit plaintiff alleges that the action rating him 20 percent disabled was arbitrary and capricious and contrary to law and applicable regulations; that he should have been given a combined disability rating of 70 percent; and that, having served prior to November 12,1918, in the United States Army, he is entitled to 75 percent of the pay of a lieutenant colonel of the United States Air Force from September 10, 1954, the date of his discharge, less the severance pay and other benefits heretofore paid to him. The amount of recovery, if any, is reserved under Rule 38(c).
4. On October 9, 1931, in an application for disability allowance, filed with the United States Veterans Bureau, plaintiff stated that the nature of the disease or injury on account of which disability allowance was claimed was “Back Ailment Piles. Heart Trouble.”
5. A report of a physical examination on October 20,1931, of plaintiff, conducted by a medical doctor examiner for the United States Veterans Bureau, in setting forth a brief outline of plaintiff’s disability since service, stated:
(1) Back aches when first arising in morning, or when in sitting for about a half hour, or driving for half hour, or when lifting any heavy object, ordinarily this pain relieves itself in about one hour, except when lifting heavy object then the pain stays for a day or two.
(2) Hemorrhoids protrude occasionally. No pain nor bleeding except when constipated.
(3) Cannot sit still, cannot sleep. Impatient. Jerky muscular movements.
In setting forth plaintiff’s subjective symptoms the report stated:
(1) Back Ailment
(2) External Hemorrhoids
(3) Nervousness
The examining medical doctor made the following notations on the report:
History of Rheumatism, after which Tonsils and bad teeth have been removed.
History of back injury while in service in which a kidney was supposed to have been tom loose. Was free *136 from backache for about five years, and about two years ago it returned, and gradually getting worse.
The general diagnosis, based on plaintiff’s entire physical condition, was:
til External hemorrhoids — Mild.
(2) Myositis and myolgia of lumbar muscles on each side of spine.
(3) Nervousness — Moderate.
16. On June 1, 1940, plaintiff was admitted to a Veterans Administration hospital at Dayton, Ohio. His complaint was “Insomnia. Nervous feeling. Mind is cloudy. Excitable and irritable.” The report of the physical examination contains the following diagnosis: “1417 Manic depressive psychosis, depressed type, incompetent.” It was recommended in the report that plaintiff be transferred to a special neuropsychiatric hospital.
7. On June 5, 1940, in an application for disability compensation or pension filed with the Veterans Administration, plaintiff answered the item calling for the nature of disease or injury on account of which claim is made, and the date each began, with the following: “Injury to back. 1918.”
8. On June 18, 1940, plaintiff was transferred from the Veterans Administration hospital at Dayton, Ohio, to a Veterans Administration facility at Chillicothe, Ohio, where his condition was diagnosed as psychosis, manic depressive, depressed type. On July 18, 1940, plaintiff was discharged. The discharge report noted that plaintiff had reached maximum benefit from hospitalization and that he was considered competent at the time of his discharge.
O. On June 24, 1940, a Eating Board of the Veterans Administration assigned plaintiff a rating of permanent and total disability for non-service connected disabilities from June 5, 1940, for “Manic depressive psychosis, depressed type, incompetent from 6-3-40.” The Eating Board found that the injury to the back, claimed by plaintiff, was not shown by the evidence of record.
10. On May 11, 1944, while serving on active duty, plaintiff was admitted to First General Hospital, APO 517. The diagnosis was “Arthralgia, acute, ankles, bilateral, knee, left, *137 and hip, left, mild, cause undetermined.” He was discharged to duty on May 13,1944.
11. On August 7, 1944, plaintiff went to the office of Dr. Robert F. Haas, an osteopathic physician in Dayton, Ohio, where plaintiff resides. Plaintiff complained of soreness and stiffness in his back as a result of lifting. Dr. Haas administered an osteopathic manipulative treatment to plaintiff.
12. On August 10,1944, and again on August 14,1944, Dr. Haas administered osteopathic manipulative treatment to plaintiff because of his back strain. Plaintiff’s condition was progressively improving.
13. On August 17, 1944, because of the continuation of plaintiff’s symptoms, Dr. Haas took an X-ray of plaintiff which showed no evidence of any bony disturbance, arthritis, or fracture. On the following day, August 18, 1944, Dr. Haas administered osteopathic manipulative treatment to plaintiff, who continued to improve.
14. On February 12,1945, plaintiff again visited Dr. Haas at his office where plaintiff complained of general tenseness throughout his spine and that he had been having severe chills and sweats. On this visit and on 7 subsequent occasions in the course of the following 12 months, Dr. Haas administered osteopathic manipulative treatment to plaintiff, who had substantially the same complaint of strain in his spine and back.
15. On March 28,1947, plaintiff was given a terminal physical examination at the Separation Center, Camp Beale, California. The medical history contained in the report of the physical examination noted: “Arthritis Knees, ankles 1944 2nd Gen. Hosp. England.” At the time of the examination plaintiff’s bones, joints, and muscles were found to be normal and no corrective measures or other action was recommended.
16. On August 1, 1947, plaintiff again visited Dr. Haas at his office where plaintiff complained of general tension. Dr. Haas administered osteopathic manipulative treatment to plaintiff’s spine and back.
17. On December 27,1949, plaintiff again visited Dr. Haas at his office where plaintiff complained of acute soreness in *138 the lumbar sacral area of his back. On this visit and on 6 subsequent occasions in the course of the next month, Dr. Haas 'administered osteopathic manipulative treatment to plaintiff’s spine and back.
18. On March 12, 1951, plaintiff was given a medical examination at Wright-Patterson Air Force Base, Dayton, Ohio, and found qualified for extended active duty, general service. The report of the examination contains the following medical history:
Scarlet fever in childhood; no complications, no sequelae. Suspected of having Gall Bladder disease while in O.B.I. Theater in 1943; good recovery, in 2 days, no recurrence, no complications, no sequelae. He has worn glasses for reading for 15 years. The condition is static. He had internal hemorrhoids in 1918, spontaneous recovery, no complications, no sequelae. He had an occasional boil on the back of his neck in childhood; no complications, no sequelae. Gun shot wound of the left hand in 1911; no complications, no sequelae. Denies all other illnesses, injuries or operations.
■19. (a) A radiographic report, dated May 7, 1954, from the United States Air Force Hospital, Wright-Patterson Air Force Base, Dayton, Ohio, of plaintiff’s cervical spine, reads in pertinent part as follows:
Examination of the cervical spine shows hypertrophic arthritic changes involving the lower cervical spine with encroachment upon the foramina between the third, fourth, fifth, and sixth cervical vertebrae on the left side and also on the right side at the same levels.
(b) A clinical record consultation sheet, dated June 16, 1954, from the same hospital, contains a provisional diagnosis of plaintiff’s condition as both osteoarthritis of the spine and psychoneurosis.
(c) A radiographic report, dated June 17, 1954, from the same hospital, contains a provisional diagnosis of plaintiff’s condition as osteoarthritis, and reads in other pertinent part as follows:
A survey film of the chest is negative.
Survey films of the hands show a narrowing of a few of the interphalangeal cartilage spaces.
*139 Survey films of the feet show no significant abnormalities.
Survey films of the shoulders show hypertrophic arthritic changes involving the acromioclavicular joints. There appears to be slight narrowing of the cartilage space of the right shoulder joint. These changes are consistent with a mild degree of hypertrophic arthritis.
(d) A report, dated June 21,1954, of a medical examination given plaintiff at the same hospital, contains a clinical evaluation of plaintiff’s condition which reads in pertinent part as follows:
Degenerative arthritis shoulders, acromioclavicular joints and hands.
Degenerative joint disease ankles and knees.
Marked osteoarthritis cervical spine with nerve root pressure, moderate in lower dorsal and lumbar spine.
The report summarizes the defects and diagnosis as “Degenerative joint disease, multiple osteoarthritis.”
(e) A report, dated June 22, 1954, of a medical board which convened at the same hospital, contains the following diagnosis of plaintiff’s condition:
7230 — Degenerative joint disease, multiple, due to unknown cause (osteoarthritis). LOD: Yes.
The medical board recommended a finding that plaintiff was unfit for military duty and further recommended that plaintiff meet a Physical Evaluation Board. The body of a clinical summary, attached to the report, reads as follows:
This 57 year old Officer was originally admitted complaining of pain in the upper back with radiation into both upper extremities. The pain started in its greater severity about April 1953 at which time he was treated with physical therapy which was without appreciable relief. The pain at first radiated down his left arm but subsequently radiated down the right arm. It is intermittent in nature but never is completely gone, varying greatly in the degree of intensity and at times it is very acute. _ Also during these times he is unable to use his arms in full range of motion because of pain and has been unable to raise his arms over the level of his shoulders freely since about April 1953. Recently this has improved, but his range of motion following treatment *140 is still limited. He also has noted at times a tingling and numbness sensation in all four extremities. _ There have been some spotty areas of hyperesthesia in both shoulders and in the calves. There is a diminished amount of strength in his musculature in the upper extremities. He has always been noted to be quite obese and at recent months has been slowly reducing his weight. While he was hospitalized overseas various laboratory tests were performed which showed that he has evidence of chronic deforming spondylitis in the lower dorsal and lumbar spine associated with mild rotary scoliosis of the lumbar spine with a convexity to the right. The kidneys by x-ray were found to be normal and a barium enema showed a normal colon. Various repeat x-ray examinations done at this hospital show a considerable amount of osteoarthritis involving the hands, feet, knees, acromioclavicular and shoulder joints. The most marked arthritic involvement, however, is encroachment of the foramen between the third, fourth, fifth, and sixth cervical vertebrae on the left side and to a lesser degree on the right side. His other laboratory tests show a lack of other positive findings of any significance. The sedimentation rate has been satisfactory. His blood count has been normal. His serology is negative. Multiple urinalyses show no abnormalities. His blood sugar is not elevated. His uric acid is normal. His total serum cholesterol is normal. Electrocardiogram is within normal limits. Chest x-ray shows some uncoiling and tortuosity of the aorta.
Course during hospitalization : Patient has been treated once or twice daily with physical therapy in the form of massage and exercise, cervical neck traction and with an abdominal corset for lordosis and ptosis of the abdomen. Dietary restriction for weight reduction has continued. In addition to this, he has been maintained on a form of salicylates and given Vitamin Bi2 as an adjunct for radicular pain of the cervical nerve plexus. During this time there has been moderate symptomatic improvement, but not of any dramatic degree.
Military history : He has always worked in Procurement and Supply with an AFSC of 6416 and 6516. He has a total of 21 years of Federal Service, of which 14 are Military, and he has had service in the First and Second World Wars.
Recommendation : Patient has had maximum benefit of military hospitalization. In his present physical status it is doubtful that he can perform satisfactory military *141 duty. Continuing medical treatment will be necessary for this chronic, progressive disease (osteoarthritis).
Final diagnoses :
(2) 2870 — Obesity. LOD: Yes.
(3) 7230 — Degenerative joint disease, multiple, due to an unknown cause (osteoarthritis) , involving significantly cervical spine, lumbar spine, acromio-clavicular and humeral joint of shoulder girdles, knees, and hands. LOD: Yes.
20. On June 24, 1954, an Air Force Physical Evaluation Board met in a modified hearing and diagnosed plaintiff’s condition as
Arthritis, hypertrophic (osteo-arthritis) involving: cervical spine, lumbar spine, shoulders bi-lateral.
The Board found plaintiff unfit for military duty, 40 percent disabled, that his disability was the proximate result of active or inactive duty training, and that his disability was not permanent but “may be permanent.” The Board recommended that plaintiff be temporarily retired. The Board did not recommend further hospitalization of plaintiff.
21. The body of a report, dated July 2, 1954, of the Air Force Physical Review Council, reads as follows:
1. The Physical Review Council has reviewed the Physical Evaluation Board proceedings in the case of Lieutenant Colonel William W. Andrews, AO 901 217, USAF, and recommends revision of the findings as follows:
a. From 40% to 20% disability rating.
b. From Temporary Retirement to Return to Duty.
2. Only specific diseases, existing to a pathologic or unusually severe degree and producing identifiable interference with military duties of personnel of similar age and grade, warrant a finding of physical unfitness. The Physical Review Council is of the opinion that the member’s disability as described in the medical records does not warrant a rating in excess of 20% in accordance with paragraph 3, Extension 7, Veterans Administration “Schedule for Rating Disabilities”. It is further the *142 Physical Review Council’s opinion that the disability is permanent, of a degenerative type not inconsistent with the member’s age, and will not preclude his continued performance of military duty.
Plaintiff did not agree with the revision of the findings as recommended by the Air Force Physical Review Council and requested a formal hearing by a Physical Evaluation Board.
22. On July 13, 1954, an Air Force Physical Evaluation Board met in formal hearing at Wright-Patterson Air Force Base. Plaintiff appeared and testified before the Board that he was in almost constant pain in both shoulders at the j oints; that the pain extended down into the muscle of the arms; that this condition began in April 1953 in Germany and had constantly worsened; that he wore a body brace as well as a neck and head brace practically all of his waking time; and that he did not feel that he could perform full military duty. The chief of the medical service of the United States Air Force Hospital, Wright-Patterson Air Force Base, testified that he had examined plaintiff; that plaintiff was definitely unfit for further military duty at that time; that he doubted if plaintiff could do a full day’s sedentary work; that plaintiff’s osteoarthritis was a degenerative joint disease which, both in radiological and clinical manifestations, was beyond the osteoarthritis which is normal for a person of plaintiff’s age. The witness concurred with the medical board diagnosis contained in the report, dated June 22,1954, and the clinical summary attached to the report (finding 19(e), supra). The Board found plaintiff unfit for military duty, 40 percent disabled, his disability to be permanent, and that his disability was the proximate result of active or inactive duty training. The diagnosis was:
Arthritis, hypertrophic, (osteo-arthritis) involving: cervical spine, lumbar spine and shoulders, bi-lateral, requiring constant use of neck and body braces.
The Board recommended that plaintiff be permanently retired.
A summary statement of the proceedings of the Board, signed by the president of the Board, reads as follows:
Attention is invited to the testimony of the medical witness in which he delineates the extent of the evaluee’s *143 disability. These symptoms include involvement of all spines, both shoulders and at times other parts of the body. The involvement is sufficient to bring on periodic spells of exhaustion and vertigo and require the constant daytime use of two braces, one for the head and neck and one for the body.
Attention is invited to the note under Paragraph 3, Extension 7 which permits a rating from 10% to 100%, depending on the extent of involvement, x-ray confirmation, limitation of motion, muscle spasm or other evidence of painful motion. In the opinion of this Board it is inconceivable that this evaluee could perform any type of duty commensurate with his age, grade and station.
23. On August 19,1954, the Air Force Physical Disability Appeal Board convened at Washington, D.C. The following are the proceedings of the Board:
The Air Force Physical Disability Appeal Board met at Washington, D.C., on 19 Aug 54, pursuant to letter orders dated 19 Jul 54.
PRESENT
Brig. Gen. Joseph O. A. Denniston, 252A, USAF
Colonel Merlin I. Carter, 488A, USAF
Colonel John E. Eoberts, 19051A, USAF(MC)
Colonel Eussell S. Leone, 19040A, USAF(MC)
Colonel Delavan H. Davis, AO299063, USAF— Eecorder
The Senior Member called the Board to order.
Lt Col Andrews was not present and was not represented by Counsel.
The Air Force Physical Disability Appeal Board proceeded with the case of Lt Col William A. [sic] Andrews, AO901217, which had been considered by a Physical Evaluation Board at Wright-Patterson Air Force Base, Ohio, on 13 Jul 54 (Exhibit 11, under provisions of Title IV, Career Compensation Act of 1949, Public Law 351 — 81st Congress, as implemented by Air Force Manual 35-4.
On 2 Jul 54 the Air Force Physical Eeview Council indicated disagreement with the findings of the Physical Evaluation Board (Exhibit 2) and referred recommended findings to member for comment. A rebuttal, dated 10 Aug 54 (Exhibit 3), to the recommendations of the Physical Eeview Council has been submitted.
The members of the Board having been duly sworn prior to entering upon their duties, the Board proceeded *144 to review the records of the case in closed session and, after consideration of the records, determined that the presence of subject member was not required.
DISCUSSION
Lt Col William A. [sic] Andrews is a married white procurement supply officer, 70" tall and weighing 191 lbs. He was bom in Pittsburgh, Pennsylvania, 30 Sep 96 and is now nearly 58 years old. He had five months service as an enlisted man prior to 24 Jan 18. He was on active duty from 2 Apr 42 until 4 Sep 44 and has had several short tours since then to make a total of 7%2 years service.
He has had osteoarthritis of spine and shoulders for several years. The question is one of rating and fitness. The Physical Evaluation Board has rated his arthritis at 40% and recommended placement on the Permanent Disability Retired List. The Physical Review Council rates it at 20% and considers him fit for duty.
The record is confusing and conflicting. His years of service is stated at various periods up to 14 years, but addition of the 12 periods on the AF Form 604 results in seven years and three months total. The clinical summary and evaluee’s attorney’s brief both state that the onset of his arthritis was in April 1953, but there is a record that evaluee was hospitalized for arthritis in the First General Hospital in May 1944.
On present hospitalization evaluee was initially admitted to the 7100th USAF Hospital on 4 Jan 54. X-rays demonstrated osteoarthritis and he was evacuated from Germany to Wright-Patterson Air Force Base Hospital. He has been rather obese for years and on 13 Mar 42 a waiver was approved for 11 lbs. overweight.
In 1946 he weighed 224 and in 1948 he weighed 222, and he has recently been slowly reducing. Physical therapy, neck traction, an abdominal corset for lordosis and ptosis of abdomen, salicylates and vitamins have resulted in moderate symptomatic improvement but not of any dramatic degree.
The Medical Board at Wright-Patterson Air Force Base on 22 Jun 54 made the diagnosis of degenerative joint disease, multiple, due to unknown cause (osteoarthritis).
The modified Physical Evaluation Board on 24 Jun 54 made the diagnosis of arthritis hypertrophic (oestoarth-ritis) involving cervical spine, lumbar spine shoulders, bilateral. This defect was rated at 40% and the Tempo *145 rary Disability Retired List was recommended. Evaluee concurred with this recommendation.
The Physical Review Council in revised recommended findings on 2 Jul 54 held that only specific diseases existing to a pathologic or unusually severe degree and producing identifiable interference with military duties of personnel of similar age and grade, warrant a finding of unfitness. The Physical Review Council further held that evaluee’s disability as described in the medical records does not warrant a rating in excess of 20% in accordance with par. 3, Extension 7, Veterans’ Administration Schedule for rating disabilities, and further held that the disability does not preclude his continued performance of military duty.
A reconvened formal Physical Evaluation Board on 13 Jul 54 made the same diagnosis and added “requiring constant use of neck and body braces,” and also recommended placement on the Permanent Disability Retired List. Evaluee again concurred. Evaluee also, along with the findings of the formal board proceedings, furnished a legal brief from counsel, Norman E. Routzohn, and a statement from Dr. Roy C. Rounds attesting to the severity of evaluee’s arthritis and his unfitness for duty.
The counsel’s brief is unrealistic and rather irrelevant. The contention that no consideration is given to appellant’s rank and age is irrelevant. The rating of a disability has no relation to age or rank. A young private may be just as disabled as an aged general. Rank is considered in the pay scale, not in the disability scale. To follow the logic of the brief, everyone retired over 45 years of age should receive 100% compensation. That would be acceptable to the military services but there is no legislation providing for it.
Counsel also misinterprets the note to par. 3 of Extension 7 of the schedule which provides for the rating of other diseases at from 10 to 100% when rated by analogy with arthritis. This note does not apply to arthritis itself. The rating of arthritis on the 10 to 100% scale was discontinued by the same Extension 7. The rating of arthritis at higher than 20% must be based upon limitation of motion of joints. The record contains no important evidence of any limitation of motion of joints. The clinical and X-ray evidence of involvement of various joints is inconclusive but there seems to be general agreement that the cervical and lumbar spine and both shoulders are involved. A careful review of the clinical summary, the medical witness’ testimony and even the *146 statement of evaluee’s own civilian consultant would lead to the conclusion that the 20% rating is correct.
The Physical Disability Appeal Board recommends separation with severance pay.
FINDINGS
The Board, having duly considered the case of Lt Col William A. [sic] Andrews, disagrees with the revised recommended findings of the Physical Beview Council, Hq, USAF, and finds:
a. That subject member is physically unfit to perform the duties of his office, rank, grade or rating by reason of physical disability incurred while entitled to receive basic pay.
b. That the diagnosis in his case is osteoarthritis, involving cervical and lumbar spine and both shoulders, under diagnostic code Bo. 5003, with a disability rating of twenty (20) per centum.
c. That, in accordance with the standard schedule for rating disabilities in current use by the Veterans’ Administration, the rating of his disabilities together with the bilateral factor is twenty (20) per centum.
d. That the disability may be of a permanent nature.
e. That maximum benefit of hospitalization has been obtained.
f. That the date when subject member became unfit to perform the duties of his office, rank, grade or rating was 4 Jan 54.
g. That the disability was not due to the intentional misconduct or willful neglect of subject member.
h. That subject member’s disability was not incurred during a period of unauthorized absence.
i. That the disability was not incurred in combat with an enemy of the United States nor was it the result of an instrumentality of war.
j. That subject member’s disability was the proximate result of the performance of active duty within the meaning of Section 402(a), Title IV, PL 351 — 81st Congress.
RECOMMENDATIONS
It is recommended that the number of years of active service in this case be verified and that the necessary action be taken to discharge Lt Col William A. [sic] Andrews from active service for physical disability under the provisions of Section 402(a), Title IV, PL 351 — 81st Congress, with the disability severance pay prescribed in Section 403 of said Public Law.
*147 The Board adjourned on 19 Aug 54.
s/ Joseph C. A. Denniston
Joseph C. A. Denniston, Brig. Gen., TJSAF
Senior Member
s/ Delavan H. Davis
Delavan H. Davis, Colonel, TJSAF
Recorder
24. On August 30, 1954, the Secretary of the Air Force approved the findings of August 19, 1954, of the Air Force Physical Disability Appeal Board.
25. On September 10, 1954, plaintiff was relieved from assignment and honorably discharged by reason of physical disability under the provisions of Section 402 of the Career Compensation Act of 1949,[16] with entitlement to severance pay as provided in Section 403 of the Act. Plaintiff was paid disability severance pay in the amount of $7,824.96.
26. A rating sheet, dated November 5, 1954, of the Veterans Administration reads in pertinent part as follows:
Issue: Evaluation of arthritis.
Facts: The veteran had four periods of service but arthritis did not show up in the service records until the last period of service. The veteran was discharged by reason of multiple arthritis which according to history started about April 1953.
Service hospital report sets out that laboratory work, physical examination and repeat X-rayed degenerative joint disease, multiple involving the cervical spine, lumbar spine, ac-romioclavicular and humeral joints of the shoulder girdles, knees and hands.
1. Incurred PL 28, 82nd Congress, VR 1(a) Pt I Par 1(a) 60% from 9-11-54
5003-725 OSTEO-ARTHRITIS, MULTIPLE JOINT INVOLVEMENT
8. Not service incurred or aggravated W W I MANIO DEPRESSIVE PSYCHOSIS RECOVERED BACK INJURY ALLEGED
NO COMBAT
8-2507 from 9-11-55
*148 27. On November 14, 1954, plaintiff again visited the office of Dr. Haas, the osteopathic physician in Dayton, Ohio, who had previously treated him. Plaintiff brought with him, and displayed to Dr. Haas, Air Force reports of physical examinations of plaintiff and an Air Force X-ray report of plaintiff. Plaintiff complained of leg cramps, marked soreness and stiffness of the neck and shoulders, and that his arms and hands got numb at times. The motion in plaintiff’s shoulders was limited to about a 90° radius and the motion of his neck was limited. Plaintiff wore a back brace and a neck brace 'at times. Dr. Haas examined plaintiff but did not take X-rays or blood tests. He relied upon the Air Force reports, which showed plaintiff’s blood chemistry to be normal, and upon Air Force X-ray reports. Dr. Haas concluded that plaintiff had hypertrophic arthritis of the spine and shoulders and arteriosclerosis.
28. In April 1955 plaintiff, upon advice of Dr. Haas, retired from the civilian employment at Wright-Patterson Air Force Base, Dayton, Ohio, where he had been working in a clerical capacity for about 6 months.
29. (a) The clinical record, dated September 6, 1955, of a Veterans Administration orthopedic examination of plaintiff, reads in pertinent part as follows:
Chief comflaint: “Painful joints”.
Historv: See “C” file for history and previous examinations. This veteran was last examined at the Cincinnati VARO December 8, 1954 for treatment purposes. A report of this examination and the X-ray findings can be found in the veteran’s treatment folder. Veteran states that he continues to have almost continuous pain in the neck, lower back, shoulders, elbows, and ankles. The severity of this pain varies from joint to joint, and from time to time. He takes medication regularly, and is being treated by an osteopath. Tins treat *149 ment only affords him temporary relief.
He has been retired from Civil Service because of his disability, and states that he is no longer able to work steadily. He has been wearing a back brace for some time, and was supplied with a new brace at the time of his last examination in December of 1954.
Physical examination: A well developed, somewhat overweight white male, aged 59, height 5'10", weight 192 pounds.
Veteran complains bitterly of pain on pressure and during motion over the cervical and lumbar regions, and will bend his neck and back only very cautiously. He also complains of pain over both shoulders and both elbows, and in both ankles. He will not attempt to raise his arms above shoulder level. Although the veteran holds himself quite rigidly during examination, and moves very cautiously, there does not appear to be any true localized muscle spasm. His symptoms appear to be somewhat exaggerated.
Diagnosis: Generalized Osteo Arthritis,
(b) Contemporaneous Veterans Administration radio-graphic reports on plaintiff read in pertinent part as follows:
Eight and left shoulders : There appears to be narrowing of the acromioclavicular joints, bilaterally. At these sites there is also some increase in bone density.
The findings represent a degenerative arthrosis of the left acromioclavicular joints, bilaterally. The remaining bones comprising the shoulders are normal in appearance. There is no abnormal soft tissue calcification.
*150 Eight and left ankles: The bones comprising the ankles are normal in appearance. Calcaneal spurs are prominent, bilaterally.
Eight and left elbows : Eo abnormality is noted in the bones comprising either elbow.
Cervical spine : There is moderate osteophytic lipping of the vertebrae comprising this region. Intervertebral disc spaces are intact.
Lumbosacral spine : There is moderate osteophytic lip-ping of the vertebral bodies comprising this region. The sacro-iliac joints are normally outlined. The inter-vertebral disc spaces are intact.
Dorsal spine : There is moderate osteophytic lipping of the vertebrae comprising this region. Otherwise, the vertebrae are normal in appearance. The interverte-bral disc spaces are intact.
Chest : At the level of the fourth interspace, anteriorly, on the right there is a minimal fibrotic deposit. The remaining pulmonary fields and cardiac silhouette are normal in appearance.
Impression : There is no evidence of any active pulmonary process.
30. Under date of September 26, 1955, plaintiff filed an application with the Air Force Board for the Correction of Military Eecords in which plaintiff requested that the record be corrected to show that he “was retired for physical disability incident to the service with a rating of 60%.” In detailing the particulars in which he believed the record to be in error or unjust, plaintiff stated:
That I was separated with a disability of 20%, that it should have shown a 60% rating as determined by the Y.A. for osteoarthritis with multiple joint involvement. The error was made by the several Boards in that they failed to take into account that the 20% rating which was given was due to a misconstruction or a misunderstanding of the application of the Y.A. Standard Schedule for Eating Disabilities. The Y.A. in applying the same evidence gave full credit for the multiple joint involvement, where the Military Boards found that they should be lumped together as “the bilateral factor is twenty (20) per centum”, whereas the Y.A. found it to be sixty (60) per centum.
*151 31. (a) By memorandum dated November 30, 1955, the Military Personnel Records Division of the Department of the Air Force requested the Chief of the Physical Standards Division of the Surgeon General’s Office for an opinion for the guidance of the Air Force Board for the Correction of Military Records indicating what action appeared appropriate in plaintiff’s case.
(b) In a reply, dated December 2, 1955, the Chief of the Physical Standards Division advised that it “is the opinion of the Surgeon General that the findings of the Air Force Disability Appeal Board is considered equitable and recommends no change in the record.”
32. By letter, dated May 7, 1956, the Executive Secretary of the Air Force Board for the Correction of Military Records advised plaintiff, in pertinent part, as follows:
The administrative regulations and procedures established by the Secretary of the Air Force for the guidance of the Board provide that an application may be.denied where the applicant has not submitted sufficient evidence to establish a showing of probable error or injustice in the case.
I regret to advise you that a careful consideration by the Board of your military record, together with such facts as have been presented by you, fails to establish a showing of probable error or injustice in your case. Therefore, in the absence of additional material evidence tending to show the commission of an error or injustice, no further action on your application is contemplated.
33. A rating sheet, dated September 20,1956, of a Rating Board of the Veterans Administration regarding plaintiff, reads in part as follows:
Facts: Veteran has submitted Form 527, received 9-10-56. He states that he has had to quit regular employment because of his service connected arthritis, and that he has only earned $1018.00 over the past twelve months selling real estate. He is self-employed and states that he works only two hours a day, five days a week. Rating dated 11-5-54 is, accordingly, amended:
*152 1. Incurred PL 28, 82nd Congress, VB 1(a)
Pt I Par 1(a)
60% from 9-11-54 to 9-9-56
60% from 9-10-56
100% from 9-10-56 (Individual unemploy-ability)
5003-725 Osteoarthritis, multiple joint involvement.
8. Hot service incurred or aggravated PL 28, 82nd Cong, WW I & WW II. Manic depressive psychosis; back injury.
32. NO COMBAT.
34. The body of a letter, dated October 23, 1956, from plaintiff’s counsel to the Executive Secretary of the Air Force Board for Correction of Military Eecords, reads as follows:
On May 7, 1956 your Board denied a hearing to Lt. Colonel William W. Andrews, AO 901 217, on grounds that the facts failed to provide sufficient evidence of probably [sic] error or injustice in the case. There is one additional thing which I would like for your Board to consider and that is the fact that the Composition Disability Appeal Board which considered Colonel Andrews’ case did not conform to the provisions of the Armed Forces Eeserve Act of 1952 in that only one of the five officers on the Physical Disability Appeals Board was a Eeserve officer and that was the Eecorder. Section 254A of the Act of 1952 provides that — -“All boards convened for the * * * retirement of members of the reserve components shall include appropriate numbers from the reserve components * *
Obviously one Eeserve officer on a Board of five is not an appropriate number. Particularly is this true in view of the fact that 80% of the officers in the Air Force are Eeserve Officers and at the time his case was considered, this was also true. Hence, this provision of the statute when Colonel Andrews was relieved from active duty in 1954 was not applied and there is no way now that he is off of active duty, to have his case reconsidered, except by your Board.
Furthermore, Colonel Andrews is forced to wear a brace at all times. The Veterans Administration has, as of September 24, 1956, determined that his arthritic rating is 60%, but because of his unemployability, he is given a 100% rating. This certainly is inconsistent with the findings of the Physical Disability Appeal Board which overruled the Physical Evaluation Board findings *153 that Colonel Andrews was 40% disabled after actually seeing him and know his true condition.
In the opinion of one person, namely me, if this is not an injustice, the word should be taken out of the English language. The difference between 20% and 100% or 20% and 60% is too great to be a matter of studied difference opinion.
A hearing should definitely be held in this case and your Board is requested to give such a hearing.
35. On January 3, 1957, plaintiff was admitted to a Veterans Administration hospital at Tucson, Arizona, with a chief complaint of an inguinal hernia of 6 or 7 weeks’ duration. The clinical record narrative summary reads in part: “In addition, he has had moderately severe osteo-arthritis since 1953, involving the neck, shoulders, and subsequently hips and elbows. He has been separated from service with a medical retirement because of this.” Surgery was performed and plaintiff made a satisfactory recovery from the hernia operation. He was discharged on January 28, 1957. The diagnosis contained in the clinical record narrative summary reads as follows:
Diagnosis: 2. Hypertrophic arthritis of shoulders, spine, and hips, moderately severe 1. Direct inguinal hernia, treated, improved
Present status of service connected disability : Osteoarthritis — Not examined for rating purposes.
36. The body of a letter dated February 27,1957, to plaintiff’s counsel from the Executive Secretary of the Air Force Board for the Correction of Military Records, reads as follows:
I refer to your letter of 23 October 1956, concerning the case of Lt Colonel William M. [sic] Andrews, AO 901 217.
Paragraph 3f, Air Force Regulation 35-16, 16 June 1954, provides that the Air Force Disability Appeal Board shall consist of not less than five members, two of whom shall be medical officers. The record shows that in this case there were five members, including two medical officers and one Reserve officer. The Reserve officer was a voting member.
Section 254(a), Armed Force Reserve Act of 1952, in effect at the time here pertinent (66 Stat 496: 50 USC 1105, now 10 USC 266) provided:
*154 “All boards convened for the appointment? promotion, demotion, involuntary release from active duty, discharge or retirement of members of the reserve components shall include appropriate numbers from the reserve components, as prescribed by the appropriate secretary in accordance with standards and policies established by the Secretary of Defense.”
The Secretary of Defense in DOD Directive 1205.4, 26 November 1952, prescribed the following standards:
“All boards convened for the appointment promotion, demotion, involuntary release from active duty, discharge, or retirement of members of the reserve components shall be constituted as prescribed by the appropriate Secretary, and shall include appropriate numbers of members from the reserve components. “The intent of the Congress in this Section is clear that a member of a reserve component who is subject of any of the indicated board actions shall be assured a fair representation of reserve membership on the board. The Secretaries of the Military Departments will, with due regard to the availability of qualified reservists, pertinent statutory provisions, the nature of the board action, and the categories, regular and reserve, which may be considered by the board, provide in the membership of the indicated boards to the fullest practicable extent a fair and adequate representation of members from the reserve components.”
In both the statute and the DOD Directive, what constitutes an “appropriate” number is left to the discretion of the Secretary of the Air Force. In our belief it cannot be said that the inclusion of one Deserve member on a board of five, including two professional members (medical) is not an appropriate number.
With respect to the case itself, the Board has again reviewed the record and finds no basis for a change in its prior decision.
37. At the trial plaintiff demonstrated that he could move his head to the right only approximately 45° and to the left only approximately 7%° to 10°; and that he was unable to raise his arms either sidewise or forward beyond 90°. Plaintiff described his condition as follows:
My legs will cramp on me, up along the side of my shin bones so that I almost have to stay in bed with it. My hips seem to contract some, and I have been to the Ball Clinic twice for that very thing. If I go to hold a *155 grip or hold a briefcase my hands will buckle up and it is necessary then to straighten them out with my other hand. In driving it is the same way. Grasping the steering wheel they will buckle and stay right mere until I open them up.
Plaintiff further testified that whenever the weather changed:
My arms will cramp, I will have pains in through my fingers and I have pains in the joints of my ankles sometimes will swell. Just general disagreement. My knees will ache.
38. Dr. Robert E. Haas, the osteopathic physician of Dayton, Ohio, who, as hereinbefore indicated, had on several occasions administered osteopathic manipulative treatments to plaintiff, testified on behalf of plaintiff. Dr. Haas stated that he had “taken care” of plaintiff each year since plaintiff’s discharge from the Air Force in 1954 and that plaintiff’s chief complaint had been soreness and stiffness of the cervical, dorsal, and lumbar sacral area with soreness and stiffness in the respective joints and the spine. Dr. Haas expressed the opinion that “from ability to make a living and all,” plaintiff’s disability “would be in the neighborhood of 90%.” Dr. Haas further testified that osteoarthritis is not solely a disease of the aged, although aging is a contributing factor.
39. Lieutenant Colonel John A. Hennessen, Jr., United States Air Force, Medical Corps, chief of orthopedic surgery of the United States Air Force Hospital, Andrews Air Force Base, testified as a witness for defendant. Dr. Hennessen is a diplómate in the American Board of Orthopedic Surgery, a member of the American Academy of Orthopedic Surgeons, and a fellow of the American College of Surgeons. Dr. Hennessen testified that the terms hypertrophic arthritis, degenerative arthritis, and osteoarthritis are interchangeable ; and that the terms rheumatoid arthritis and atrophic arthritis are interchangeable. Osteoarthritis, according to Dr. Hennessen, is manifested chiefly by changes occurring at the margins of a j’oint, whereas rheumatoid arthritis is pathology involving the entire j‘ oint. Dr. Hennessen further testified that among the causes of osteoarthritis are trauma and the aging process of the human body, but that the cause *156 of rheumatoid arthritis is not known; that there is no record in plaintiff’s case of rheumatoid arthritis; but that certain medical records in plaintiff’s case did show osteoarthritis involving certain joints on his right side; and that the radio-graphic report, dated June 17, 1954, of plaintiff was commensurate with a mild degree of osteoarthritis. Dr. Hen-nessen had not personally examined plaintiff and had not reviewed some of plaintiff’s clinical files which were not in evidence. Dr. Hennessen expressed the opinion that in evaluating the degree of plaintiff’s osteoarthritis, his psychiatric problems must be taken into consideration. It was Dr. Hen-nessen’s view that in many normal individuals in plaintiff’s age group, there is a loss of motion up to 25 percent in the neck; and that the normal range of right and left rotation of the neck is 45°.
Dr. Hennessen has served on Air Force Physical Evaluation Boards and has frequently used the Veterans Administration Schedule for Bating Disabilities. He stated that he would rate plaintiff under Veterans Administration Code 5005 within the area of approximately 20 percent, and that he would agree with the 20 percent rating that was given plaintiff by the Air Force.
Dr. Hennessen said that there was no notation in plaintiff’s records that a goniometer (measuring instrument) was used in any of the examinations of plaintiff in measuring the various degrees of loss of motion; that under the provisions of a Manual for Medical Examiners of the Veterans Administration a goniometer should be used for such purpose, but that “an examiner using his eye can be just as accurate.”
40. Veterans Administration Schedule for Bating Disabilities, 1945 Edition, provides:
COMBINED RATINGS TABLE
(10 combined with 10 is 19)
10 20 30 40 50 60 70 80 90
19 ______________ 27 35 43 51 60 68 76 84 92
20 ______________ 28 36 44 52 60 68 76 84 92
21 -------------- 29 37 45 53 61 68 76 85 92
22 ______________ 30 38 45 53 61 69 77 84 92
*157 23 ______________ 31 38 46 54 62 69 77 85 92
24 ______________ 32 39 47 54 62 70 77 85 92
25 ______________ 33 40 48 55 63 70 78 85 93
26 ______________ 33 41 48 56 63 70 78 85 93
27 ______________ 34 42 49 56 64 71 78 85 93
28 ______________ 35 42 50 57 64 71 78 86 93
29 ______________ 36 43 50 57 65 72 79 86 93
30 ______________ 37 44 51 58 65 72 79 86 93
31 ______________ 38 45 52 59 66 72 79 86 93
32 ______________ 39 46 52 59 66 73 80 86 93
33 ______________ 40 46 53 60 67 73 80 87 93
34 ______________ 41 47 54 60 67 74 80 87 93
35 ______________ 42 48 55 61 68 74 81 87 94
36 ______________ 42 49 55 62 68 74 81 87 94
37 ______________ 43 50 56 62 69 75 81 87 94
38 ______________ 44 50 57 63 69 75 81 88 94
39 ______________ 45 51 57 63 70 76 82 88 94
40 ______________ 46 52 58 64 70 76 82 88 94
41 ______________ 47 53 59 65 71 76 82 88 94
42 ______________ 48 54 59 65 71 77 83 88 94
43 ______________ 49 54 60 66 72 77 83 89 94
44 ______________ 50 55 61 66 72 78 83 89 04
45 ______________ 51 56 62 67 73 78 84 89 95
46 ______________ 51 57 62 68 73 78 84 89 95
47 ______________ 52 58 63 68 74 79 84 89 95
48 ______________ 53 58 64 69 74 79 84 90 95
49 ______________ 54 59 64 69 75 80 85 90 95
50 ______________ 55 60 65 70 75 80 85 90 05
51 ______________ 56 61 66 71 76 80 85 90 05
52 ______________ 57 62 66 71 76 81 86 90 95
53 ______________ 58 62 67 72 77 81 86 91 95
54 ______________ 59 63 68 72 77 82 86 91 95
55 ______________ 60 64 69 73 78 82 87 91 96
56 ______________ 60 65 69 74 78 82 87 91 96
57 ______________ 61 66 70 74 79 83 87 91 96
58 ______________ 62 66 71 75 79 83 87 92 96
59 ______________ 63 67 71 75 80 84 88 92 96
60 ______________ 64 68 72 76 80 84 88 92 96
61 ______________ 65 69 73 77 81 84 88 02 96
62 ______________ 66 70 73 77 81 85 89 92 96
*158 63 ______________ 67 70 74 78 82 85 89 93 96
64 ______________ 68 71 75 78 82 86 89 93 96
65 ______________ 69 72 76 79 83 86 90 93 97
66 ______________ 69 73 76 80 83 86 90 93 97
67 ______________ 70 74 77 80 84 87 90 93 97
68 ______________ 71 74 78 81 84 87 90 94 97
69 ______________ 72 75 78 81 85 88 91 94 97
70 ______________ 73 76 79 82 85 88 91 94 97
71 ______________ 74 77 80 83 86 88 91 94 97
72 ______________ 75 78 80 83 86 89 92 94 97
73 ______________ 76 78 81 84 87 89 92 95 97
74 ______________ 77 79 82 84 87 90 92 95 97
75 ______________ 78 80 83 85 88 90 93 95 98
76 ______________ 78 81 83 86 88 90 93 95 98
77 ______________ 79 82 84 86 89 91 93 95 98
78 ______________ 80 82 85 87 89 91 93 96 98
79 ______________ 81 83 85 87 90 92 94 96 98
80 ______________ 82 84 86 88 90 92 94 96 98
81 ______________ 83 85 87 89 91 92 94 96 98
82 ______________ 84 86 87 89 91 93 95 96 98
83 _____________- 85 86 88 90 92 93 95 97 98
84 ______________ 86 87 89 90 92 94 95 97 98
85 ______________ 87 88 90 91 93 94 96 97 99
86 ______________ 87 89 90 92 93 94 96 97 99
87 ______________ 88 90 91 92 94 95 96 97 99
25. Oombined Ratings Table — The combined ratings table results from the consideration of the efficiency of the individual as affected first by the most disabling condition, then by the less disabling condition, then by other less disabling conditions, if any, in the order of severity. Thus, a person having a 60 percent disability is considered 40 percent efficient. Proceeding from this 40 percent efficiency, the effect of a further 30 percent disability is to leave only 70 percent of the efficiency remaining after consideration of the first disability, or 28 percent efficiency altogether. The individual is thus 72 percent disabled, as shown in the table opposite 60 percent and under 30 percent. To use the combined ratings table, the disabilities will first be arranged in the exact order of their severity, beginning with the greatest disability. If there are two disabilities, the degree of the greater will be read in the left-hand column, and the degree of the lesser disability will be read in the top *159 row. The figures appearing in the space where the column and row thus ascertained intersect will represent the combined value of the two. * * *
41. Extension 7, effective July 6, 1950, Veterans Administration Schedule for Rating Disabilities, 1945 Edition, provides:
Under authority of Veterans Regulation No. 3(a), issued pursuant to Public No. 2,73d Congress, and Public Law 458, 79th Congress, the following Extension of the 1945 Schedule for Rating Disabilities is promulgated.
# * ❖ H* *
Diagnostic Code 5003, Arthritis, hypertrophic, degenerative arthritis, or osteo-arthritis. Delete:
“Rate on limitation of motion of joints affected assuming minimum 10 percent rating for each major joint or group of minor joints affected by bone changes, swelling, muscle spasm on motion, or pain objectively substantiated.”
Substitute the following:
“A substantiated degenerative arthritis, as distinguished from localized hyperostosis and other changes about the joint due to direct or intermittent trauma, congenital deformities, supernumerary parts, etc., or postural deformities, shall receive a minimum rating of 10%, or, if there is a satisfactory history of ex-acerbations from time to time, 20%. The following ratings are therefore authorized.
“With X-ray evidence of involvement of two or more major joints, or two or more minor joint groups, with occasional incapacitating exacerba-tions -----------------------------------20%
“With X-ray evidence of involvement of two or more major joints or two or more minor joint groups---------------------------------10%
“Note : The 20% and 10% ratings above will not be utilized in rating other diseases of bones, joints, and muscle, rated by analogy. Other ratings will be authorized in the range 10% to 100% based on the extent of involvement, assuming minimum 10% for each major joint or group of minor joints presenting X-ray confirmation of the disease and also swelling, limitation of motion or muscle spasm or other evidence of painful motion.”
*160 42. Air Force Regulation No. 35-49, dated November 1, 1949, provides in part as follows:
29. Taking oe oral testimony :
a. General Provisions. At the beginning of the hearing, the individual ordered before the board will be afforded an opportunity to state’ under oath the nature and cause of any disability. The individual will not be required to make any statement or to answer any question touching on the circumstances surrounding the origin or aggravation of any injury or disease he may have, and his failure to make any such statement or to answer any such question will not be construed as an implied admission of any sort. However, the board may consider any statement in this connection which the individual states that he desires to submit in evidence. The board, the recorder, and counsel may orally examine him at this time or later for the purpose of making full discovery of all facts as to his condition. Neither upon this examination nor when testifying in his own behalf will he be required to answer any question the answer to which may tend to incriminate or to degrade him. An individual sunnnoned before a Physical Evaluation Board may testify in his own behalf, if he so desires. When testifying as a witness in his own behalf, he may be cross-examined as any other witness. He may introduce witnesses on his behalf, and testimony of witnesses, and may cross-examine witnesses examined by the board. He also may cross-examine members of the board if they have taken part in his physical examination and have indicated an opinion regarding his physical condition.
b. Medical Witnesses. The presence of medical witnesses at every hearing is not required. The board may summon medical witnesses or such other special witnesses as it considers necessary to arrive at proper findings in the case, and to comply with the legal requirement of a full and fair hearing.
30. Objections:
a. How Handled. Objections to any action taken or proposed to be taken by the board, and to the admission of testimony, may be made, and when made, will be recorded as a part of the proceedings. The board will cause to be noted in the record its ruling on any objections that may be offered. Ordinarily, the objections will be passed upon by the president of the board. However; if any member dissents from the president’s ruling, the board will be closed and the objection passed upon *161 by the board in closed session, but the ruling of the board will be announced in open session, upon the reopening of the board.
b. Why Permitted. The object of permitting objections is that the board may give due consideration to its action, with opportunity during the proceedings to correct any erroneous action or rulings.
31. Continuances. The board may continue a hearing on its own motion and may continue the hearing from time to time, either at the request of the recorder, or at the request of the individual summoned before the board or his counsel if the board considers a continuance necessary in order that a full and fair hearing may be had.
32. Inapplicability of statutes of limitation. The investigation of a Physical Evaluation Board is not restricted by any statute of limitation. It may inquire into the matter of a disability however long since it may have originated.
33. Recommended findings :
a. Determination of Physical Fitness. At the close of the hearing, the board will go into closed session for the purpose of arriving at an initial recommended finding as to whether the mdividual is or is not physically unfit to perform the duties of his office, rank, grade, or rating. If the initial recommended finding is that the individual is not physically unfit, no additional recommended findings are required. If, however, the initial recommended finding is that the individual is physically unfit, the board will determine the diagnosis and degree of each physical defect noted which is considered to be permanent or probably permanent in nature. These defects will be placed in the following categories:
(1) Disabling'. Any defect which in itself renders the individual unfit to perform the duties of his office, rank, or grade.
(2) Contributory. Any defect other than a disabling defect, which may be classed as permanent or probably permanent in character.
b. Percentage of Physical Defects. Having categorized the physical defects as indicated above, the board will determine the percentage of each physical defect in accordance with the standard schedule of rating disabilities in current use by the Veterans’ Administration ; whether the defect was due to the intentional misconduct or willful neglect of the member and whether *162 the defect was incurred during a period of unauthorized absence of such member.
c. Basis for Arriving at Findings. Since the “disability” of a member may be comprised of one or more disabling defects; a combination of one or more disabling and contributory defects; or an accumulation of contributory defectSj the determinations of the board with respect to physical defects, as outlined in a above, may be considered as preliminary steps necessary to the establishment of a basis for arriving at recommended findings with respect to the individual’s “disability.” Accordingly, having identified the physical defects which constitute the “disability” (including all disabling and contributory defects), the board then will proceed to make recommended finding with respect to the “disability” as follows:
(1) In cases of Regular members, or of members of a Reserve component who were called or ordered to extended active duty for a period in excess of 30 days and who incurred disability while so employed:
(a) Whether the “disability” is due to the intentional misconduct or willful neglect of the member. (See d below.)
(b) Whether the “disability” was incurred during a period of unauthorized absence of the member. (See d below.)
(c) Whether the “disability” is 30 percent or more in accordance with the standard schedule of rating disabilities in current use by the Veterans’ Administration. (See e below.)
(d) Whether the “disability” was the proximate result of the performance of active duty. (See f below.)
(e) Whether the “disability” is permanent or may be permanent in accordance with accepted medical principles.
(f) The date or approximate date when the member became physically unfit to perform the duties of his office, rank, grade, or rating.
d. Due to Misconduct or Neglect, etc. In determining whether a “disability” is due to misconduct or neglect; or was incurred during a period of unauthorized absence ; or was not the proximate result of the performance of proper duty, the board will exclude from the total of the physical defects constituting the “disability” those defects considered to be due to misconduct or neglect; or *163 to have been incurred during a period of unauthorized absence; or to have been incurred other than as the proximate result of the performance of proper duty. The excluded defects, for the purpose of this and the following subparagraph, may be considered as “non-compensatory” defects and the included defects as “compensatory” defects. The board then will proceed as follows:
(1) If the combination of the “compensatory” defects renders the individual physically unfit to perform the duties of his office, rank, or grade, the recommended finding of the board will be that the “disability” was not due to misconduct or neglect, was not incurred during a period of unauthorized absence, or was the proximate result of the performance of proper duty as the case may be.
(2) If the “compensatory” defects do not render the individual unfit, the board should then determine whether the combination of the noncompensatory defects renders the individual physically unfit. If this be the case the recommended finding of the board will be that the “disability” was due to misconduct or neglect, was incurred during a period of unauthorized absence, or was incurred other than as the result of the performance of proper duty, as the case may be.
(3) If the compensatory^ defects alone do not render the individual physically unfit, and the noncom-pensatory defects alone do not render the individual physically unfit, but the combination of both do render him physically unfit, then the recommended finding of the board will be that the “disability” was not due to misconduct or neglect, was not incurred during a period of unauthorized absence, or toas the proximate result of the performance of proper duty as the case may be.
e. Determination of §0 Per Gent Disability. In determining whether the “disability” is 30 per cent oi more, the board will exclude, for computation purposes, the “noncompensatory” defects. If the remaining defects constitute a “disability,” of 30 per cent or more in accordance with the standard schedule of rating disabilities in current use by the Veterans’ Administration, the recommended finding of the board with respect to this requirement will be in the affirmative.
f. Disability Proximate Result of Performance of Active Duty. In the cases of those members referred to *164 in c(l) above, only, a recommended finding with respect to whether a disability was the proximate result of the performance of active duty is not required when such member has completed eight or more years of “active service” as such term is defined herein. Additionally, in the cases of such members who have not completed eight years of active service, the last proviso of Section 402a, Public Law 351, 81st Congress, as quoted below, applies:
“Provided further, that any disability shown to have been incurred in line of duty during a period of active service in time of war or national emergency should be considered to be the proximate result of active duty.”
g. Summary Statement. The president of each Physical Evaluation Board, at the time the board determines its recommended findings in a case, will cause a statement to be prepared for inclusion with the proceedings, summarizing the facts considered and the conclusions reached by the members of the board in arriving at each recommended finding. This statement will reflect the points discussed by the board members which had bearing on the eventual recommended finding. In particular, the statement will adequately portray the reasons for the separation from the total of the defects constituting the disability of any defect which is not clearly shown m the record of testimony to have been due to neglect or misconduct, or to have been incurred during a period of unauthorized absence, or not to have been incurred as the proximate result of the performance of proper duty. Additionally, the observation of the board with respect to the general appearance of the individual appearing before the board, pertinent statements of witnesses, significant evidence contained in the medical history or clinical record, and other points which the board felt had material bearing on the recommended finding, may be included. When properly prepared, these statements will be of assistance to reviewing authorities in determining the final action to be taken in cases in which, in the absence of such statements, the evidence in the record would not appear to substantiate fully the recommended findings arrived at by the board. As the statement of conclusions constitutes in part a record of the closed session of the board, the Department will receive only the original copy securely attached to the original copy of the Physical Evaluation Board proceedings. A duplicate copy of the statement *165 may be retained by tbe Physical Evaluation Board at the discretion of the president.
43. Air Force Manual 35-4, dated July 1, 1954, entitled “Military Personnel Physical Evaluation for Retention, Retirement, and Separation” prescribes the procedure and sets forth the authority for the retention, retirement, and separation of members of the Air Force with physical defects or disabilities which render such members unfit. This Manual superseded AFM 35-4, 1 November 1952, including Change 35-4A, 1 June 1953. AFM 35-4, 1 July 1954, provides in part as follows:
Chapter 3
Physical Evaluation Board
Section A. Composition oe Physical Evaluation Board
53. Purpose
The physical evaluation board is a fact-finding board established for the three-fold purpose of:
a. Investigating the nature, cause, degree, and probable permanency of the disability of any evaluee whose case may brought [sic] before it.
b. Providing a full and fair hearing for the evaluee concerned if he demands it.
c. Making recommended findings on the determinations required by law to establish eligibility for disability retirement or separation. The physical evaluation board is not a statutory board and its recommended findings are subject to revision.
54. Appointment and composition
* # if: ifc
c. Composition
(1) * * * When the evaluee is a member of a Reserve component, the majority of the voting members of the board will be Reserve officers of the Air Force, if available. * * *
$ $ $ $ $
Chapter 5
Headquarters USAF Action on Physical Evaluation Board Proceedings
84. Physical review council
a. Composition. The Physical Review Council (heretofore referred to as “the Physical Review Board”) is *166 convened at Headquarters USAF. The Physical Review Council is a non-voting group consisting of representatives of the Deputy Chief of Staff, Personnel; the Surgeon General, USAF; and The Judge Advocate General, USAF. The record of proceedings of a physical evaluation board, when received in Headquarters USAF, will be referred immediately to the Physical Review Council.
b. Concurrence With Recommended Findings of Physical Evaluation Board. If the Physical Review Council concurs with the recommended findings of the physical evaluation board or if the Physical Review Council makes minor changes which do not affect the evaluee’s disposition or lower his retirement or severance pay, the Physical Review Council will transmit the case to the Secretary of the Air Force for final action.
c. Nonconcurrence With Recommended Findings of Physical Evaluation Board. If the Physical Review Council recommends changes other than those changes referred to in b above, the Physical Review Council will:
(1) Forward revised recommended findings in the case, with a summary of reasons for nonconcurrence with the physical evaluation board, to the evaluee concerned or his authorized representative, as appropriate. An information copy will be forwarded to the physical evaluation board for use of the counsel in advising the evaluee. The record of proceedings and all allied papers will be retained by the Physical Review Council pending receipt of the evaluee’s reply, or
(2) Return the case to the appropriate activity for further action.
*i* íjj «i» *!»
86. Physical disability appeal board
The Physical Disability Appeal Board will be convened at Headquarters USAF. The Physical Disability Appeal Board is a voting board consisting of such membership as the Secretary of the Air Force may from time to time prescribe. In instances wherein an evaluee, his authorized representative, or his counsel files a rebuttal to the revised recommended findings of the Physical Review Council, the entire case will be referred to the Physical Disability Appeal Board. When the Physical Disability Appeal Board concurs in the revised recommended findings of the Physical Review Council, the action will be final, subject to the approval of the Secretary of the Air Force. When, however, the Physical Disability Appeal Board disagrees with the revised recommended findings of the Physical Review Council, the Physical Disability Appeal Board is em *167 powered to make new findings, stating its reasons both for its own findings, and reasons against prior findings, and then will submit the case to the Secretary of the Air Force.
87. Final action by secretary oe the air eorce Notification of final action by the Secretary of the Air Force will be forwarded to the evaluee in each instance.
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is entitled to recover, and judgment will be entered to that effect. The amount of recovery will be determined pursuant to Buie 38 (c) of the rules of this court.
In accordance with the opinion of the court and a memorandum report of the commissioner as to the amount due thereunder, it was ordered on May 8, 1964, that judgment be entered for the plaintiff for $13,202.67.

 The original plaintiff, William W. Andrews, died after commencement of this suit. Pursuant to order of this court, dated March 29, 1963, John Stewart Andrews, executor and legal representative, and Mrs. Lora A. Andrews, widow of plaintiff, as their interests may appear, were substituted as proper party plaintiffs. For convenience the original party in interest is referred to throughout this opinion as plaintiff.

 See Finding of Fact No. 41.

 See Finding of Fact No. 21.

 See Finding of Fact No. 22.

 Id.

 See Findings of Fact Nos. 23 and 41.

 See Findings of Fact Nos. 26, 29, 33, and 35.

 See Findings of Fact Nos. 26 and 33.

 Air Force Pamphlet 34 — 4-9, pp. 11-13, dated 5 April 1961. Section B is entitled Principles in Applying the Veterans Administration Schedule. It states, in part, in reference to Diagnostic Code 5003 :
“e. The ‘other ratings’ referred to in the second sentence of the note under code 5003 means ‘ratings for osteoarthritis other than- the ten percent and 20 percent ratings listed.’ Such ‘other ratings’ should be applied by analogy to limitations of motion * * *. The instruction is intended to provide for more equitable ratings for localized, severe, constant functional impairment than can be represented by the 10 percent and 20 percent ratings for the more generalized manifestations. Such separate ratings are not to be combined with the basic 10 percent and 20 percent ratings.” [Emphasis added.]
The later Air Force Pamphlet, 35-3-1, pp. 8 and 9, dated 20 February 1963, continues this same interpretation.

 Finding of Fact No. 22. See especially the final paragraph of that finding.

 Supra, note 7.

 The Schedule for Rating Disabilities, 1945 edition, of which Extension 7, effective July 6, 1950, is a part, indicates that the various schedules are considered generally adequate but that a veteran’s disability claim requires re-ratings in accordance with the changes in his physical or mental condition or for other reasons. This is recited in the general policy for rating disability. The language in various parts of the general policy states that the actual rating must depend upon the degree of disability. The general policy statement indicates that the ratings apply to an average case and may be changed up or down in the light of the severity of the disease or disability, and that in many instances the schedule percentage is the minimum.
The Schedule also states at pp. 1-3 that the policy of the Veterans Administration is “to administer the law under a broad interpretation ** * * [and that if] a reasonable doubt arises regarding * * * the degree of disability * * * such doubt will be resolved in favor of the claimant.” It further states that “if there is a reasonable doubt * * * as to which of two ratings shall be applied in any given case, the claimant is entitled to the higher.” In fact, a careful reading of the substituted part of Extension 7, quoted in Finding 41, indicates that the figures set out are for minimum ratings.

 Mackey v. United States, 135 Ct. Cl. 411, 415, 142 F. Supp. 922, 924 (1956).

 That statute reads in pertinent part:
“All boards convened for the appointment, promotion, demotion, involuntary release from active duty, discharge, or retirement of members of the reserve components shall include appropriate numbers from the reserve components, as prescribed by the appropriate secretary in accordance with standards and policies established by the Secretary of Defense.” [Emphasis supplied.]

 63 Stat. 802.

 63 Stat. 802.